IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| DOROTHY MACK, | ) | |
| o/b/o her minor child, B.J.M., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:14cv869-CSC |
| | ) | (WO) |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

Plaintiff Dorothy Mack filed this lawsuit on behalf of her son, B.J.M.,[2] to review a final judgment by defendant Carolyn Colvin, Acting Commissioner of Social Security, in which she determined that B.J.M. is not "disabled" and therefore, not entitled to supplemental security income benefits.  Her application was denied at the initial administrative level.  The plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ also denied the claim. On September 14, 2011, the Appeals Council remanded the claim for resolution of the following issue:

---

[1]  Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.

[2]  Pursuant to the E-government Act of 2002, as amended on August 2, 2002, and M.D. Ala. General Order No. 2:04mc3228, the court has redacted the plaintiff's minor child's name throughout this opinion and refers to him only by his initials, B.J.M.

The hearing decision does not sufficiently evaluate whether the claimant's mental impairments meet or equal the requirements of Listing 112.05D. The evidence of record includes two valid IQ scores between 60 and 70 (Exhibits 5F, p. 2 and B-12F, p.3). In addition, there is evidence of additional significant functional limitations resulting from the claimant's depression, anxiety, uncorrectable unilateral hearing loss, asthma and speech delay. Evaluating psychiatrist, George DeMuth, MD, and evaluating psychologist Warren Bentley, PhD, both assessed the claimant with mild mental retardation (Exhibits 14F, p. 8 and B-12F, p. 2). Moreover, the record shows that the claimant was retained in kindergarten.

The hearing decision acknowledged that the record contains evidence of IQ scores that meet the listing criteria; and that the claimant had to repeat a grade in school. However, the Administrative Law Judge appeared to place greater stock in the fact that the claimant had not been placed in special education classes and concluded that the claimant lacks deficits in adaptive functioning (Decision, p.4). The Council finds that supplemental medical expert testimony is needed to clarify whether the claimant's mental impairments cause deficits in adaptive functioning and ultimately meet, medically equal or functionally equal a listing in the Listing of Impairments.

(R. 106).

The Appeals Council remanded the matter to the ALJ for further proceedings to

- Obtain additional evidence concerning the claimant's disruptive behavior disorder, depression, anxiety, intellectual limitations, and speech and language impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 416.912-913). The additional evidence may include, if warranted and available, a consultative psychiatric examination with psychological testing and medical source statements about what the claimant can still do despite the impairments.

- Obtain evidence from a medical expert to clarify whether the claimant's impairments meet, medically equal or functionally equal a listing in the Listing of Impairments (20 CFR 416.924, 416.926a and Social Security Ruling 09-1p.

(R. 107).

After another hearing on December 6, 2012, the ALJ concluded that B.J.M has severe

impairments of

> borderline intellectual functioning with IQ score, which are of questionable
> validity, in the mild mentally retarded range; ADHD; developmental delays;
> history of premature birth; Disruptive Behavior Disorder; Depressive Disorder;
> Anxiety Disorder; asthma; otitis media with severe hearing loss right
> (accommodated at school with front row seat in class); sinusitis; pharyngitis;
> costochondritis; history of GERD; and expressive and receptive language
> delays (20 CFR 416.924(c)).

(R. 18). The ALJ further concluded that B.J.M. did not have an impairment or a combination

of impairments that meet or medically equal a listed impairment. (*Id*.).

> I have also considered Medical Listing 112.05 for Mental Retardation. I note
> intelligence testing administered to the claimant in June of 2006 resulted in the
> following scores: Verbal IQ 66, Performance IQ 70, and Full Scale IQ 65 and
> these scores were considered valid. However, I have reviewed all of the
> records from the claimant's treating pediatrician, Dr. Pessoa, and note that
> there is no indication in these records that Dr. Pessoa considered the claimant
> to be mentally deficient. I also note that Dr. Pessoa referred the claimant to
> Dr. Palmer, a psychiatrist, for behavior problems. Dr. Palmer's notes do not
> reflect a finding that the claimant was referred for intelligence testing or that
> he has been placed in EMR or even in Special Education services. The
> claimant has been given preferential seating in the front of the class due to his
> hearing impairment. Dr. Garner, a psychologist, was present as a medical
> expert at the hearing and testified that the claimant is functioning in the
> borderline range of intellectual functioning. His most recent score of 55 was
> not valid as it was the lowest of the scores and the other scores were more
> consistent. The claimant does not struggle in the classroom. Dr. Garner opined
> that the claimant's mental impairments do not meet Medical Listings 1112.02
> for Organic Mental Disorders or 112.05 for Mental Retardation. Dr. Anderson
> was present as a medical expert at the hearing and testified that the claimant's
> hearing problems with hearing loss did not meet any listing. Even assuming
> the scores to be perfectly accurate, he is still obviously <u>functioning</u> in the
> borderline intellectual range.

(R. 19).

3

The plaintiff appealed the ALJ's decision to the Appeals Council, requesting the Appeals Council again review the ALJ's decision.  The Appeals Council rejected the request for reconsideration, and the ALJ's decision became the final decision of the (Commissioner).[3]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

The case is now before the court for review pursuant to 42 U.S.C. §§ 405 (g) and 1383(c)(3).  The parties have consented to the undersigned United States Magistrate Judge rendering a final judgment in this lawsuit pursuant to 28 U.S.C. § 636(c)(1) and M.D. Ala. LR 73.1.  Based on the court's review of the record in this case and the briefs of the parties, the court concludes that the decision of the Commissioner should be reversed and remanded to the Commissioner for further proceedings.

## II.  STANDARD OF REVIEW

An individual under 18 is considered disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i) (1999).  The sequential analysis for determining whether a child claimant is disabled is as follows:

1.      If the claimant is engaged in substantial gainful activity, [he] is not disabled.

---

[3] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub.L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

2.      If the claimant is not engaged in substantial gainful activity, the Commissioner determines whether the claimant has a physical or mental impairment which, whether individually or in combination with one or more other impairments, is a severe impairment.   If the claimant's impairment or combination of impairments is not severe, [he] is not disabled.

3.      If the impairment or combination of impairments is severe, [the Commissioner] determines whether [the claimant] has an impairment that meets, medically equals, or functionally equals the listings. If [the claimant] has such an impairment and it meets the duration requirement, then [the Commissioner] will find [the claimant is] disabled.

*See* 20 C.F.R. § 416.924(a).

The Commissioner's regulations provide that if a child's impairment or impairments are meet or medically equal, or functionally equivalent in severity to a listed impairment, the child is disabled.   *See* 20 C.F.R. § 416.924(d)(1).   In determining the severity of an impairment, the ALJ considers the child's ability to function in the following areas: motor function, cognitive/communicative function, social function, personal function, and concentration, persistence and pace.   20 C.F.R. Pt. 404, Subpt. P. App. 1, MENTAL DISORDERS, 112.00C.  The preferred method of function is through the use of standardized tests.  *Id*.

In reviewing the Commissioner's decision, the court asks only whether his findings concerning the steps are supported by substantial evidence.   *Dyer v. Barnhart,* 395 F.3d 1206, 1210 (11th Cir. 2005).  Substantial evidence is "more than a scintilla," but less than a preponderance: it "is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.,* 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).  The court "may not decide the facts anew, reweigh the evidence, or substitute . . . [its] judgment for that of the [Commissioner]." *Phillips v. Barnhart,* 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004) (alteration in original) (quotation marks omitted).  The court must, however, conduct an "exacting examination of the [Commissioner's] conclusions of law." *Martin v. Sullivan,* 894 F.2d 1520, 1529 (11th Cir. 1990).

## III.  ISSUES

As stated by the plaintiff, she presents two issues for the Court's review:

1.    The Commissioner's decision should be reversed, because the ALJ failed to state with particularity the weight he gave the medical opinions expressed by Dr. Clark and the reasons therefor.

2.    The Commissioner's decision should be reversed, because the ALJ erred by improperly acting as both Judge and mental health professional before fulfilling his duty to develop the evidentiary record.

(Doc. # 12, Pl's Br. at 6). It is to these issues that the court now turns.

## IV.  DISCUSSION

**A. Introduction.**  B.J.M. was born on April 23, 1999.  He was thirteen years old  on the date of the last administrative hearing.  (R. 54).  His mother alleges that B.J.M. is disabled due to developmental delays, hearing loss, and mild mental retardation.  Following the hearing, the ALJ found that B.J.M. was not engaged in substantial gainful activity, and had severe impairments of

6

> borderline intellectual functioning with IQ score, which are of questionable validity, in the mild mentally retarded range; ADHD; developmental delays; history of premature birth; Disruptive Behavior Disorder; Depressive Disorder; Anxiety Disorder; asthma; otitis media with severe hearing loss right (accommodated at school with front row seat in class); sinusitis; pharyngitis; costochondritis; history of GERD; and expressive and receptive language delays (20 CFR 416.924(c)).

(R. 18).

The ALJ further concluded that B.J.M. does not have an impairment or combination of impairments that meet or medically or functionally equal one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1., including Listings 102.00, Special Senses and Speech, 103.00, Respiratory System, and 105.00 for Digestive System. (R. 18) He further concluded that B.J.M. did not meet Listing 112.05, Mental Retardation. (R.19-28).

The ALJ next considered whether B.J.M.'s impairments were "functionally equal" to a level of severity in a Listing. (R. 28-35). In order to functionally equal a listing, B.J.M.'s impairments must result in "marked" limitations in two or more of six functional domains or "extreme" limitation in one functional domain. 20 C.F.R. § 416.926a(a). These six functional domains are set forth in the applicable regulations: Acquiring and using information; Attending and completing tasks; Interacting and relating to others; Moving about and manipulating objects; Caring for yourself; and Health and physical well-being. *Id.* at 416.926a(b).

The ALJ concluded that B.J.M.. has "less than marked limitation" in the domain of acquiring and using information, attending and completing tasks, interacting and relating

with others, caring for himself, and in health and physical well-being.  (R. 30-34).  Thus, the

ALJ determined that B.J.M. is not disabled.  (*Id.*).

**B.  Presumptive Disability under Listing 112.05(D).**  The plaintiff raises several

issues and arguments related to this court's ultimate inquiry of whether the Commissioner's

disability decision is supported by the proper legal standards and substantial evidence.  *See*

*Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).  However, the court pretermits discussion

of the plaintiff's specific arguments because the court concludes that the ALJ erred as a

matter of law when he failed to properly consider whether B.J.M. was presumptively disabled

under Listing 112.05.

Although the ALJ had before him several valid IQ scores, the ALJ concluded that the

plaintiff's impairments did not meet or equal in severity Listing 112.05.  Listing 112.05

provides, in pertinent part, that a claimant is disabled if he meets the following criteria:

§ 112.05 *Intellectual Disability*.[4]  Characterized by significantly subaverage
general intellectual functioning with deficits in adaptive functioning.

The required level of severity for this disorder is met when the
requirements in A, B, C, D, E or F are satisfied.

Section D requires a valid verbal, performance or full scale IQ scores of 60 through 70 and

a physical or other mental impairment that imposes an additional, significant limitation of

function.  *Id*.

---

[4]  "The 2013 version of the Listing of Impairments replaced the term 'Mental Retardation' with
'Intellectual Disability.'"  *T.R.C. ex rel. Boyd v. Comm'r, Soc. Sec. Admin*, 553 F. App'x 914, 918 n.2 (11th
Cir. 2014).

On June 20, 2006, Dorn Majure, Ph.D., administered the Wechsler Intelligence Scale for Children - III to B.J.M. when he was seven (7) years old.  B.J.M. obtained a verbal I.Q. score of 66, a performance I.Q. score of 70 and a full scale I.Q. score of 65.  (R. 409-410).  Dr. Majure indicated that the test results were valid and indicative of B.J.M.'s level of functioning.  (R. 410).

Two years later, in April 2008, Lee Stutts, Ph.D., administered the Wechsler Intelligence Scale for Children - IV to B.J.M.  (R. 546).  At that time, B.J.M. obtained a verbal comprehension I.Q. score of 67, a perceptual reasoning I.Q. score of 69, a working memory I.Q. score of 74, and a processing speed I.Q. score of 88.  (*Id.*)  His full scale I.Q. score was 68.

Finally, on March 19, 2012, when B.J.M. was twelve (12) years old, Daniel C. Clark, Ph.D., administered to him once again the Wechsler Intelligence Scale for Children - IV.  (R. 548-549).  At that time, B.J.M. obtained a verbal comprehension I.Q. score of 65, a perceptual reasoning I.Q. score of 55, a working memory I.Q. score of 74, and a processing speed I.Q. score of 80.  (R. 548)  His full scale I.Q. score was 60. (*Id.*).  Dr. Clark indicated that the test results were valid and indicative of B.J.M.'s level of functioning.  (*Id.*).

The majority of B.J.M's I.Q. scores fell between 60 and 70, and the test results were deemed valid by the administrators of the tests.  Although the ALJ acknowledged that B.J.M. had valid I.Q. scores, the ALJ concluded that B.J.M. does not meet the requirements of Listing 112.05.

I have considered Listing 112.05 and all of the Listings.  I am aware that he has presumably valid IQ test scores in the mild mental retardation range and that finding by one examiner has carried over into the reports of other psychological professionals.  Yet the school he attends in which he is seen, taught by and observed by his teachers **6 hours a day 5 days a week for every school** day should be in a better position to evaluate his intellectual capacities than any one time, one hour, if that, examiner who gave an IQ test to the claimant.  Many factors, including lack of desire or motivation to do well on the test, not to mention the pending disability application could have influenced the result at least to some degree.  Granted the child had to repeat one year.  Yet from what we see and the lack thereof in the record, the school has not seen fit to place this child in EMR or even in Special Education!  Nor do I see any evidence that they have seen fit to test him in that regard, which is virtually always done when mental retardation is suspected by the teachers or others at the school.  And somehow this child has been doing well in school. I agree that if this child is mentally retarded that he meets Listing 112.05D. However, I stated in the last decision that I would like to have some additional evidence from the school that any of the professionals there have noticed or recognized or even suspected that they are dealing with a "retarded" student. Absent that, with the record as it is at this point, I was not and am not convinced and I do not believe that this child is in fact retarded.

The Appeals Council said to get an expert witness.  We did and she is quite sure that he is not retarded.

But in the meantime, the school records have still not been produced!  . . . Moreover, if the school had determined or even suspected that the child was retarded or even slow, they would almost certainly have placed him in DMR, Special Education or at the very least tested him to try to make that determination, the parent would have gotten notice of it, and if nothing else was obtainable from the school (which is very unusual), could at least submit what the school had sent, if of course any of this had happened, which rather apparently it did not.  Had anything of the kind occurred at school, I think we can almost presume that the representative would have obtained and submitted it.  Rather, apparently no one at the school, with all of its trained professionals who see him 6 hours a day 5 days a week about 9 months a year, have never noticed or even suspected any mental deficiency and that is <u>huge</u> in terms of what I believe and what I find in this case.  It is not overcome by relatively brief test by psychologists, especially given the inherent financial motivation for the claimant to score as low as possible.  However, even assuming the

scores to be perfectly accurate, he is still obviously **FUNCTIONING** in the borderline intellectual range.

(R. 28).

While the ALJ has some discretion in accepting other evidence to determine the validity of test scores, the ALJ may not reject a valid score. *See Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992). The ALJ's suggestion that the claimant, at the age of seven, nine and twelve years old, may be sufficiently sophisticated to manipulate the results of I.Q. testing over a six year period for financial gain is pure speculation that borders on the ridiculous. B.J.M.'s I.Q. scores are consistent over a six year period and all three psychologists opined that his I.Q. scores were valid. "Mental retardation is not normally a condition that improves as an affected person ages. . . . Rather a person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.'" *Hodges v. Barnhart*, 276 F.3d 1265, 1268-69 (11th Cir. 2001) (quoting *Muncy v. Apfel*, 247 F.3d 728, 734 (8th Cir. 2001)). In determining that B.J.M. was functioning in the range of borderline intellectual functioning, the ALJ substituted his judgment for the judgment of the psychologists which he may not do. *See Allen v. Sullivan*, 880 F.2d 1200, 1202 (11th Cir. 1989). The three psychologists who examined B.J.M. and administrated the IQ tests opined that B.J.M.'s I.Q. scores accurately reflected his level of functioning. Consequently, the court concludes that the ALJ erred when he improperly rejected B.J.M.'s I.Q. scores.

The ALJ further erred when he determined that B.J.M. does not meet Listing 112.05

because he was not in special education classes.  The Commissioner's own regulations prohibit the ALJ from relying strictly on grades and placement in special education classes to deny benefits.

> Although grades and the need for special education placement are relevant factors which much be considered in reaching a decision . . ., they are not conclusive.  There is too much variability from school district to school district in the expected level of grading and in the criteria for special education placement to justify reliance solely on these factors.

Listings of Impairments, 20 C.F.R. Pt. 404, App. 1.  Listing 112.00 (C)(3).

The ALJ mistakenly treats this proceeding as if it were an adversarial proceeding ruling against the plaintiff because she was unable to secure school records while ignoring references in the record that indicate that B.J.M.'s mother unsuccessfully attempted to secure special education services through the school system. (R. 431-32, 537, 536, 535, 546, 434-435).  Social security hearings are not adversarial.  "Social Security proceedings are inquisitorial rather than adversarial.  It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-111 (2000).  *See also Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000).

It is undisputed that B.J.M. also suffers from ADHD, developmental delays, Disruptive Behavior Disorder, Depressive Disorder, Anxiety Disorder, asthma and moderately severe hearing loss in his right ear.  (R. 18).  All of these conditions could impose additional, significant limitations of function on B.J.M.  However, because the ALJ erroneously substituted his judgment for that of the psychologists regarding B.J.M.'s I.Q.

scores, he did not complete the requisite analysis to determine whether B.J.M. meets Listing 112.05.  Thus, this case must be remanded for further proceedings. Given the ALJ's obvious antipathy towards faithful consideration of the evidence and his emphasis on stereotypical speculation, the court suggests to the Commissioner that on remand this case be assigned to another ALJ.

## V.  CONCLUSION

Accordingly,  this case  will be reversed and remanded to the Commissioner for further proceedings consistent with this opinion.  In addition to the foregoing, the court strongly suggests but does not order that upon remand, the Commissioner refer this case to another ALJ for further consideration.  It is evident that the ALJ in this case has lost his objectivity regarding this case.

It is further

ORDERED that, in accordance with *Bergen v. Comm'r of Soc. Sec*., 454 F.3d 1273, 1278 fn. 2 (11th Cir. 2006), the plaintiff shall have **sixty (60)** days after receipt of notice of any amount of past due benefits awarded to seek attorney's fees under 42 U.S.C. § 406(b). *See also Blitch v. Astrue*, 261 F. App'x 241, 242 fn.1 (11th Cir. 2008).

Done this 30th day of March, 2016.

_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE